GARDINER, Judge.
The plaintiff, Wagenvoord Broadcasting Company, Inc., filed suit against the defendant, William Lonigan, d/b/a House of Sound, to recover the sum of $1,555.00 which it asserts is the balance due under the terms of a contract for radio advertisement time entered into between itself and the defendant. The plaintiff averred that it settled an $845.00 indebtedness for advertisement services rendered under the terms of the contract for the sum of $400.-00; however, it denied that the settlement included cancellation of the contract and alleged that it had continued to advertise as agreed and that the balance due for said advertisement is $1,555.00.
In an amended petition, the plaintiff pleaded in the alternative that should the court determine that its claim was extinguished by the compromise, it should have judgment for the amount against its agent, Credit Control Agency, Inc., because it had, through negligence, exceeded its authority to settle the claim for $845.00 only, by including in the agreement the cancellation of the contract, and further alleged that it had not ratified the action of the collection agency.
The third party defendant, Credit Control Agency, Inc., answered and denied the plaintiff’s allegations of negligence, and in addition, alleged that it had compromised the plaintiff’s claim pursuant to express authority granted to it by the plaintiff’s Vice-President, Harry Ladas. It also filed a reconventional demand for $10,000.00 representing damages for embarrassment, loss of reputation and loss of business.
The plaintiff answered the reconventional demand and alleged again that express authority was given to Credit Control Agency, Inc., to settle for $400.00 the claim of $845.00 only, which was already due.
The defendant Lonigan answered admitting that suit was filed against him in First City Court for $845.00, but he averred that this claim had been settled for $400.00, and he further alleged that the settlement included termination of his contract with the plaintiff. He prayed in the alternative that should the court determine that Credit Control Agency, Inc., exceed its authority, he be granted judgment over and against Credit Control Agency, Inc., in the amount of any judgment which might be rendered against him on the main demand.
The Credit Control Agency, Inc., answered this third party demand reiterating its original allegations including its express authority to compromise as it had done, and prayed for dismissal of the plaintiff’s claim against it.
Following a trial on the merits, judgment was rendered in favor of the plaintiff, Wagenvoord Broadcasting Company, Inc., and against the defendant, Credit Control Agency, Inc., in the amount of $1,265.00, the plaintiff’s suit against Lonigan, d/b/a House of Sound, was dismissed. From that judgment, Credit Control Agency, Inc., has prosecuted this appeal.
The record discloses that on or about October 13, 1965, the Wagenvoord Broadcasting Company, Inc., contracted with the defendant William Lonigan, d/b/a House of Sound, for advertisements over radio *325 station WWOM for the sum of $2,400.00. Some of these advertisements were broadcast, but as payment of $845.00 then due was not made, the plaintiffs, on July 15, 1966, turned this account, designated as an open account, over to Credit Control Agency, Inc., for collection. On July 26, 1966, suit was filed by the broadcasting company in First City Court for recovery of $845.00, hut without the knowledge of La-das or the collection agency. Following negotiations between Lonigan and the collection agency, a compromise agreement was reached by which Lonigan gave a check to Banker, an employee of the collection agency, in the amount of $400.00, made payable to the plaintiff. The reverse side of the check bore the inscription: “This represents full and final payment and all contracts to date are agreed can-celled. Signed_” A written release was obtained by said Banker on July 28, 1968, which he gave to Lonigan at his request. The release reads as follows:
“Gentlemen:
“Our records indicate that you were indebted to us in the amount of $845.00 as of February 8, 1966.
“This is to inform you that we hereby agree to settle said $845.00 for the sum of $400.00.”
This letter is signed by Harry Ladas, Executive Vice-President and General Manager of Wagenvoord Broadcasting Company. Banker turned the check over to his employer, Credit Control Agency, Inc., which it deposited and after deducting the fee for collection, mailed its check for $340.00 to the plaintiff.
Lonigan testified that he had given a check to the plaintiff for $150.00 and exchanged merchandise valued at $144.00 in addition to the $400.00 paid as settlement of the $845.00 claim, which he contended he had refused to pay because the advertisement services of the plaintiff were not of the quality they were represented to be and they were played at times other than those agreed to. He explained that the purpose of entering into the contract was to advertise his grand opening and push sales during the season prior to Christmas of 1965. He stated that some advertisements were broadcast prior to Hurricane Betsy, which occurred in September of 1965, but due to damage caused by the hurricane, advertisements ceased until difficulties were rectified. He stated that when he complained to the broadcasting station, it merely apologized and promised it would run the advertisements at a later time. He contended that his refusal to pay the amount due was because of his dissatisfaction with the plaintiff’s fulfillment of the contract. He agreed to the settlement, but stated that he was not satisfied with the letter of release signed by Ladas, and that Banker dictated the inscription which he typed on the check after assurance by Banker that, based on his conversation with Ladas, the settlement was to include cancellation of the contract and final payment of any amounts due under the contract.
Harry Ladas testified that WWOM has broadcast more advertisements than called for by the contract with the defendant. He also admitted that following Hurricane Betsy the station was off the air for thirty-seven and one-half hours, after which time it broadcast under low power at no charge to its customers for eleven days and seven hours, when it resumed full power operations, and Lonigan was billed beginning in October of 1965. He stated that payments had been received in the amount of $150.00 and the $400.00 settlement, leaving a balance due of $1,405.00. He admitted giving the claim for $845.00 to Credit Control Agency, Inc., for collection in July of 1966, and that he had informed Banker to settle the claim for $400.00, and pointed out that he was not aware at that time that suit had been filed in the First City Court to collect the debt. He also testified that he has never seen the check with the inscription releasing Lonigan from the contract, and that he only saw a photostat of it after this suit *326 was filed. He contended that he never intended that the compromise would include full and final payment of all sums that might he due or become due under the contract nor cancellation of the contract, although he admitted that he did not remember his exact conversation with Banker relative to the compromise and the letter of release which was prepared by him at the request of Lonigan communicated to him by Banker.
Banker testified that he was not aware of the contract for $2,400.00 when he first attempted to collect the $845.00 claim from Lonigan and that after the parties agreed on the $400.00 settlement, he obtained the letter from Ladas at Lonigan’s request and admitted that he dictated the substance of the letter to Ladas. When he returned with the letter to the music shop, Lonigan showed him the notice of the suit in the First City Court, which had been served upon him. After receiving notice, he stated he telephoned Ladas and informed him of the conflict of interest and that Lonigan felt he would not pay the $400.00 settlement because of that service: however, Ladas informed him that he would withdraw the suit. Banker denied dictating the inscription which was typed on the check, but admitted that he saw Lonigan typing it and that he did not read the inscription and he turned the check over to his office without informing his employer or the plaintiff of the contents of the inscription. He also admitted that his conversation with Ladas covered only the fact that the suit was filed against Lonigan and his obj ections to it. He stated that the claim for the $845.00 was the obligation which was settled for $400.00, and that he had no knowledge of any agreement of the plaintiff to release anything other than that claim.
The trial judge, in his written reasons, made the following statement:
“The testimony further bears out the fact that the plaintiff never saw this check, nor did the plaintiff ever agree, either with defendant William Lonigan d/b/a House of Sound, or with the Credit Control Agency, Inc., that it would cancel the contracts which it had with the defendant William Lonigan * * *, it being their understanding that they were simply accepting $400.00 in settlement of its claim for $845.00.”
He concluded that the collection agency exceeded its authority by including that which was not intended by the plaintiff and thereby made itself liable for damages in the amount of $1,555.00, subject to a credit in the amount of $290.00, thus reducing the damages to $1,265.00, for which judgment was rendered against the Credit Control Agency, Inc. The suit was dismissed as to Lonigan, d/b/a House of Sound, and as no appeal was taken, that part of the judgment is not before this court.
From our review of the facts we are convinced that the judgment of the district court is correct. By the agent’s own admission he believed that he was settling only the $845.00 claim, and he admitted that he did not read the inscription on the check, which was a complete release from the contract. It was the duty of the agent to determine what he was settling and to act without exceeding his authority under penalty of becoming personally responsible to his principal for any damages resulting from his failure to do so where it is not shown that there was fault or negligence on the part of the principal in misleading the agent.
The defendant, Credit Control Agency, Inc., filed a reconventional demand for damages in the sum of $10,000.00 for embarrassment and loss of business caused by the institution of this suit. Although the trial judge did not dispose of the reconventional demand, we find the claim without merit and accordingly it should be dismissed.
For the foregoing reasons, the judgment appealed from is amended by dismissing *327 the reconventional demand of Credit Control Agency, Inc.; in all other respects the judgment is affirmed.
Amended and affirmed.